NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 200606-U

NOS. 4-20-0606, 4-20-0608 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 9, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| PERRY E. HAMPTON, | ) | Nos. 09CF1903 |
| Defendant-Appellant. | ) | 10CF222 |
| | ) | |
| | ) | Honorable |
| | ) | John R. Kennedy, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not abuse its discretion in sentencing defendant to an aggregate 28-year prison sentence for residential burglary and aggravated battery.

¶ 2    In February 2010, a jury found defendant, Perry E. Hampton, guilty of one count of residential burglary in Champaign County case No. 09-CF-1903. The trial court sentenced defendant to 29 years' imprisonment in the Illinois Department of Corrections. In January 2011, a jury found defendant guilty of aggravated battery in Champaign County case No. 10-CF-222. In March 2011, the court sentenced defendant to eight years' imprisonment to run mandatorily consecutive to the sentence imposed in case No. 09-CF-1903. In October 2019, a Cook County circuit court entered an order granting defendant a certificate of innocence in Cook County case No. 06-CR-04579. In light of the change in defendant's criminal history, the Champaign County circuit court vacated defendant's sentences and set the matter for resentencing. In January 2020,

the court resentenced defendant to 22 years' imprisonment for residential burglary and 6 years'

imprisonment for aggravated battery.

¶ 3        Defendant appeals, arguing his aggregate 28-year prison sentence is excessive

because the evidence demonstrated both his actual rehabilitation and his capacity to rehabilitate,

as well as defendant's remorse and familial support. We affirm.

¶ 4                                   I. BACKGROUND

¶ 5        In November 2009, the State charged defendant with one count of residential

burglary (720 ILCS 5/19-3 (West 2008)) and one count of armed violence (720 ILCS 5/33A-2(a)

(West 2008)) in Champaign County case No. 09-CF-1903. Testimony at trial revealed the victim,

Robert Brown, was "totally blind" and lived with his four-year-old granddaughter at the time of

the burglary. Upon hearing the intruders enter his home, Brown grabbed his gun for protection,

locked his bedroom door and dialed 911. Upon arrival, police found Vishan Johnson carrying a

television out of the residence. Upon seeing police, Johnson ran back into the residence. Police

eventually found defendant and Johnson hiding in an upstairs bedroom. Police conducted a

sweep of the house and found Brown's television and a .25-caliber handgun. Brown told police

he only had one gun, a 9-millimeter handgun, and no other weapons should have been inside the

residence. Following a February 2010 trial, a jury found defendant guilty of residential burglary,

but not guilty of armed violence. In March 2010, the trial court sentenced defendant to 29 years'

imprisonment.

¶ 6        While awaiting sentencing in connection with case No. 09-CF-1903, defendant

was charged with one count of aggravated battery (720 ILCS 5/12-4(b)(18) (West 2008)), in case

No. 10-CF-222, for allegedly seizing Lieutenant David Smalley by the neck.

¶ 7        In December 2010, the matter proceeded to jury trial. During deliberations, the jury indicated they were deadlocked, and the trial court declared a mistrial.

¶ 8        In January 2011, the trial court conducted defendant's second jury trial. Correctional Officer Pennie Allen testified on February 4, 2010, she was on duty in defendant's cell block. Allen testified defendant did not have his identification arm band with him. Defendant indicated he had left it in his cell. As a result, defendant was not permitted to proceed to the recreation area. Allen further testified defendant was later denied visitation privileges because he did not have his identification arm band. Allen described defendant as "angry" and increasingly more agitated. Eventually, Lieutenant David Smalley arrived to address defendant's behavior. Allen testified Smalley instructed defendant to turn around and place his hands behind his back. Defendant refused and grabbed Smalley by the throat.

¶ 9        Officer Jeffrey Ohl testified on February 4, 2010, he responded to a disturbance involving defendant. Ohl testified defendant was screaming, cursing, and kicking the door when he arrived at the cell block. When Smalley tried to handcuff defendant, defendant attempted to punch Smalley. Ohl then placed defendant in a headlock at which time defendant began choking Smalley. Ohl testified he was unable to loosen defendant's grip on Smalley until Officer Allen pulled out her mace and placed it in front of defendant's face.

¶ 10        David Smalley testified he was retired. He formerly worked as a lieutenant with the Champaign County Sheriff's Office. Smalley testified to substantially similar events as Allen and Ohl. Additionally, Smalley stated when defendant was choking him, he felt as though he was going to faint and he could no longer breathe. Smalley sought medical attention after the incident. He experienced a headache, "raspy voice," and trouble swallowing for approximately two and a half weeks.

¶ 11　　　　On January 20, 2011, a jury found defendant guilty of aggravated battery. On March 4, 2011, the trial court sentenced defendant to eight years' imprisonment, to run mandatorily consecutive to case No. 09-CF-1903.

¶ 12　　　　On October 11, 2019, the Cook County circuit court entered an order granting defendant a certificate of innocence in Cook County case No. 06-CR-04579. Defendant's conviction for aggravated unlawful use of a weapon was vacated as the underlying statute was found unconstitutional in unrelated proceedings. In light of the change in defendant's criminal history, defendant filed *pro se* a postconviction petition in the Champaign County circuit court. The court appointed defendant counsel, and following a hearing on the petition, the court vacated defendant's sentences and set the matter for resentencing.

¶ 13　　　　On November 18, 2020, the trial court held a resentencing hearing in case Nos. 09-CF-1903 and 10-CF-222. The parties presented a sentencing stipulation in which they agreed the court "may and should consider the court files, the records of proceedings, and the transcripts of all prior hearings in [these cases] to include the trial and sentencing, and aggravation and mitigation evidence presented." The State presented no new evidence in aggravation. In mitigation, defendant presented the testimony of Keya Hampton, LaWanda Upshaw, and William James. Keya Hampton testified she was defendant's mother. Hampton stated defendant was "very remorseful for everything he's done," specifically noting defendant expressed remorse with regard to the residential burglary offense. LaWanda Upshaw testified she was in a dating relationship with defendant. Upshaw described defendant as remorseful. However, on cross-examination, Upshaw stated defendant had not admitted to actively participating in the residential burglary but rather, defendant was remorseful for being in the house while the burglary took place. William James testified he was defendant's uncle. James testified defendant

had been exposed to some of the gang activity James participated in when defendant was growing up. James testified he would be able to help defendant obtain employment if defendant were released from prison.

¶ 14        In allocution, defendant expressed his remorse, stating "there was a lot of things I could have done differently." In regard to the aggravated battery, defendant expressed remorse for choking Officer Smalley. However, defendant then stated he was sorry "[f]or allowing Mr. Smalley in for issuing his comment to me to get me so perturbed." Defendant further stated as he grew and matured over time, "I've learned to look at this case on both sides as to how this all could have been avoided. I figure the better use of restraint in Mr. Smalley's approach would have been most feasible."

¶ 15        The State recommended the trial court impose the original sentence of 29 years' imprisonment for residential burglary and 8 years' imprisonment for the aggravated battery conviction, an aggregate 37-year sentence. In support of its recommendation regarding the residential burglary conviction, the State noted the following:

> "[The State] is troubled by the testimony of the witnesses today, frankly because it appears to [the State] that rather than showing up and actually taking responsibility or suggesting to them [defendant] did something wrong, [defendant] knew what was happening, *** [defendant has] essentially continued in the same vein of defense that was presented at trial and sentencing, as somehow this was a mistake and [defendant] got wrapped up in it."

The State further indicated, with regard to the aggravated battery conviction, even in light of the fact defendant was incarcerated and awaiting sentencing for residential burglary, defendant "still

couldn't control himself to the point where he didn't commit a violent assault on one of the officers."

¶ 16    Defense counsel recommended the trial court impose a sentence of 16 years' imprisonment for the residential burglary and 6 years' imprisonment for the aggravated battery conviction, an aggregate 22-year sentence, which defense counsel indicated was "just time served essentially." In support of the recommendation, defense counsel argued defendant was rehabilitated and "if he were released today, he's going to have employment." Additionally, defense counsel believed there was no longer a need to protect the public from defendant as defendant had "aged out of crime."

¶ 17    Following argument, the trial court stated it had considered the financial impact of incarceration on the defendant, the presentence report, evidence offered in aggravation and mitigation, arguments of counsel, and defendant's statement in allocution. Specifically, the court noted it had considered "evidence offered at prior hearings, that by agreement the court has been able to receive and consider, and then the evidence offered today at this particular hearing."  In mitigation, the court stated defendant had matured since the original sentence was imposed and defendant had a strong family support system. The court noted the testimony of defendant's mother, stating it was important defendant recognized the effect of the residential burglary upon the victims. The court opined defendant's reflections regarding the impact of the burglary on the victims may help him to conduct himself differently in the future. Moreover, the court found the long-term nature of defendant's relationship with LaWanda Upshaw significant. The court determined defendant was a different person today than he was when he committed the offenses of residential burglary and aggravated battery more than 10 years earlier. Specifically, the court noted defendant's maturity and "I think there's much more rehabilitative potential."

¶ 18 In aggravation, the court noted defendant's lengthy criminal history and the need to deter others from committing the instant offenses. The court characterized the residential burglary as "horrendous," noting the advanced age and disability of the victim. The court stated further:

> "And why it's horrendous is because the reaction it provoked naturally in [the victim], and then his protective instinct of the granddaughter. And again, you read his testimony, and he's—going through his mind is my god, I'm going to have to shoot the person on the other side of the door. And he didn't want to do it, and he thought that was the only choice he had left."

The court noted defendant willingly participated in the residential burglary knowing the victim was elderly and visually impaired.

¶ 19 Turning to the aggravated battery conviction, the trial court emphasized the offense was not the result of improper conduct by Lieutenant Smalley, rather the incident happened because defendant "was mad things weren't going his way." The court emphasized defendant's failure to acknowledge responsibility for the offense, noting defendant's statement in allocution appeared to place blame on Lieutenant Smalley for the incident. Defendant's failure to take responsibility for his actions caused concern for the court as to how defendant would handle potential future encounters with law enforcement. The court characterized defendant's actions as "horrendous" against someone "who's just doing his job."

¶ 20 In case No. 09-CF-1903, the trial court resentenced defendant to 22 years' imprisonment. In case No. 10-CF-222, the court resentenced defendant to six years' imprisonment, to run consecutive to the sentence imposed in case No. 09-CF-1903, for an aggregate 28-year sentence.

¶ 21    On November 24, 2020, defendant filed a motion to reconsider his sentence, which the trial court denied.

¶ 22    This appeal followed. The appeal of case No. 09-CF-1903 was docketed as case No. 4-20-0606, and the appeal of case No. 10-CF-222 was docketed as case No. 4-20-0608. In May 2021, this court allowed defendant's motion to consolidate the appeals.

¶ 23                                    II. ANALYSIS

¶ 24    On appeal, defendant argues his sentence is excessive because the evidence demonstrated both his actual rehabilitation and his capacity to rehabilitate, as well as defendant's remorse and familial support.

¶ 25    We afford a trial court's sentencing decision substantial deference. *People v. Snyder*, 2011 IL 111382, ¶ 36, 959 N.E.2d 656. Absent an abuse of discretion, a reviewing court will not disturb a sentence within the statutory limits imposed by the trial court. *People v. Flores*, 404 Ill. App. 3d 155, 157, 935 N.E.2d 1151, 1154 (2010). "A sentence within the statutory guidelines provided by the legislature is presumed to be proper." *People v. Wheeler*, 2019 IL App (4th) 160937, ¶ 38, 126 N.E.3d 787. "The trial court abuses its discretion at sentencing only when the sentence varies greatly from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *Wheeler*, 2019 IL App (4th) 160937, ¶ 39. Similarly, a trial court can abuse its discretion if its sentencing decision is "arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 26, 82 N.E.3d 693. "A reviewing court will presume that the trial court considered all relevant factors and any mitigating evidence presented [citation] and may not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." *Wheeler*, 2019 IL App (4th) 160937, ¶ 38. "A

defendant's rehabilitative potential and other mitigating factors are not entitled to greater weight than the seriousness of the offense." *People v. Pippen*, 324 Ill. App. 3d 649, 652, 756 N.E.2d 474, 477 (2001).

¶ 26    In this case, defendant was convicted of residential burglary, a Class 1 felony. A Class 1 felony ordinarily carries a sentence of 4 to 15 years; however, based on defendant's prior criminal history, he was eligible for an extended-term sentence of "not less than 15 years and not more than 30 years" (see 730 ILCS 5/5-4.5-30(a) (West 2008)). Defendant was also convicted of aggravated battery, a Class 2 felony, punishable by a term of imprisonment of "not less than 3 years and not more than 7 years" (see 730 ILCS 5/5-4.5-35(a) (West 2008)). Because the trial court's 22-year sentence for residential burglary and 6-year sentence for aggravated battery both fall within the relevant sentencing range, we presume the sentences are reasonable and will not disturb them absent an abuse of discretion. See *People v. Moore*, 41 Ill. App. 3d 3, 4, 353 N.E.2d 191, 192 (1976).

¶ 27    The record indicates the trial court considered the appropriate statutory aggravating and mitigating factors before it imposed the aggregate 28-year sentence. Based on the evidence before it, the court identified several factors in mitigation. Specifically, the court noted defendant had matured since the date the crime was committed, defendant had a strong support network, and there was "more rehabilitative potential" now than when the crimes were committed. However, the court also noted defendant's significant criminal history. In addition, the court emphasized the serious nature of the residential burglary offense, citing to the victim's age, disability, and the psychological impact the incident had on the victim. The court also found "[defendant] knew what was going on" and further, defendant committed the offense against someone "who had been a resource to [defendant]." The court reasoned because of the serious

nature and the circumstances surrounding the residential burglary offense, "[t]hat's the kind of stuff that should not and cannot happen to anybody."

¶ 28 Turning to the offense of aggravated battery, the trial court found in aggravation defendant's recollection of events, "that, you know, should have been handled differently by the correctional officer, that gives [the court] concern." The court also indicated a concern for defendant's future conduct should he have an encounter with law enforcement. In discussing the seriousness of the offense, the court described defendant's conduct as horrendous, indicating the correctional officer was simply acting in the course of his duties and "doesn't need to get his throat throttled to the point that he can't take in air."

¶ 29 Our review of the record reveals the trial court properly considered the nature of the offenses, as well as defendant's rehabilitative potential. The court specifically noted defendant's familial support system and his maturity since committing the offenses were mitigating factors. However, the court also considered the seriousness of the offenses, describing the circumstances of both offenses as "horrendous." "[I]t is the trial court's duty to balance the mitigating and aggravating factors and to make a reasoned decision as to the appropriate sentence." *Etherton*, 2017 IL App (5th) 140427, ¶ 34. Defendant's sentences fall within the statutory range of possible sentences for residential burglary and aggravated battery, and there is nothing in the record to suggest the trial court's sentences were fanciful, arbitrary, unreasonable, or manifestly disproportionate to the nature of the offenses. See *Etherton*, 2017 IL App (5th) 140427, ¶ 26.

¶ 30 In support of defendant's argument that the trial court abused its discretion by imposing an aggregate 28-year prison sentence in this case, defendant's brief states the following: "It is noteworthy that new technologies have allowed scientists to better observe the

physical development of the brain, and research shows that the region of the brain associated with reasoning continues to develop well into a person's twenties, concluding around the age of 25. *See, e.g.,* Am. Bar Assn., *Adolescence, Brain Development, & Legal Culpability*, Jan. 2004, available at www.abanet.org/crimjust/juvjus/Adolescence.pdf; *see also* Beatrice Luna, Ph.D., *Brain and Cognitive Processes Underlying Cognitive Control of Behavior in Adolescence*, University of Pittsburgh, Oct. 2005." The State argues this court should strike defendant's argument because the article was not presented to the trial court. Generally, this court will not consider facts or data not presented to the trial court. See *People v. O'Neal*, 2021 IL App (4th) 200014, ¶ 65. Defendant asks this court to conclude the trial court abused its discretion, based in part, on an article that was not presented to the trial court. We decline to do so.

¶ 31                                    III. CONCLUSION

¶ 32            For the reasons stated, we affirm the trial court's judgment.

¶ 33            Affirmed.